UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| TINA M.[1], | : Case No. 3:20-cv-391 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Peter B. Silvain, Jr. |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## DECISION AND ENTRY

Plaintiff Tina M. brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #16), the Commissioner's Memorandum in Opposition (Doc. #19), Plaintiff's Reply (Doc. #20), and the administrative record (Doc. #13).

**I.      Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for benefits on April 16, 2018, alleging disability due to several impairments, including bipolar disorder and anxiety. (Doc. #13-5, *PageID* #219). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Laura Chess. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since April 16, 2018.

Step 2: She has the severe impairments of chronic obstructive pulmonary disease (COPD); degenerative changes of the cervical spine; thyroid disorder; bipolar disorder; and anxiety disorder.[2]

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work… except lift and/or carry 20 pounds occasionally and 10 pounds frequently [Plaintiff] can frequently (but not constantly) climb, stoop, kneel, crouch, and crawl. [Plaintiff] can frequently (but not constantly) reach. [Plaintiff] can occasionally be exposed to extreme cold and humidity. [Plaintiff] can occasionally be exposed to dust, fumes, odors, gases, and poor ventilation. [Plaintiff] can occasionally interact with coworkers and supervisors. [Plaintiff] can never interact with the public. [Plaintiff] can understand, remember, and carry out simple instructions. [Plaintiff] can make simple work-related decision. [Plaintiff] can tolerate occasional changes in a routine work setting. [Plaintiff] cannot work at a production rate pace, such as work on an assembly line."

She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

---

[2] Plaintiff's argument focused Dr. Singh's opinion on her mental health impairments and has waived any other challenges to other opinions or impairments as she failed to adequately raise them. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (finding plaintiff had waived its challenge to the ALJ's findings on certain impairments by not raising it in the merits brief).

(Doc. #13-2, *PageID* #s 59-68). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 68.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #13-2, *PageID* #s 59-68), Plaintiff's Statement of Errors (Doc. #16), the Commissioner's Memorandum in Opposition (Doc. #19), and Plaintiff's Reply (Doc. #20). To the extent that additional facts are relevant, they will be summarized in the analysis below.

## II.     Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

In this case, Plaintiff raises one assignment of error, which is that the "ALJ reversibly erred in evaluating the medical source opinions and [Plaintiff's] symptom severity." (Doc. #16, *PageID* #462). In response, the Commissioner maintains that the ALJ evaluated the medical opinions and Plaintiff's complaints consistent with the regulations and that her decision is supported by substantial evidence. (Doc. #19, *PageID* #s 475-78).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 416.920c, 416.927. Because Plaintiff's claim for disability was filed in April 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017. 20 C.F.R. § 416.920c. Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." § 416.920c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 416.920c(c). Further,

4

because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 416.920c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 416.920c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 416.920c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that the ALJ erred in her assessment of Plaintiff's treating source, Darshan Singh, M.D.. (Doc. #16, *PageID* #s 462-63). In addition to the progress notes submitted from his treatment of Plaintiff, Dr. Singh also examined Plaintiff and completed a "Mental Impairment Questionnaire" in September 2019. (Doc. #13-9, *PageID* #s 446-48). On the

5

questionnaire, Dr. Singh indicated that he had been treating Plaintiff for Bipolar Disorder, Type I and Unspecified Anxiety Disorder since 2015. *Id*. at 446. In response to a list of potential signs and symptoms, Dr. Singh indicated that Plaintiff exhibited symptoms, including sleep disturbance; personality change; mood disturbances; social withdrawal or isolation; decreased energy; manic syndrome; recurrent panic attacks; persistent irrational fears; paranoia or inappropriate suspiciousness; generalized persistent anxiety; difficulty thinking or concentrating; and hostility and irritability. *Id*. He confirmed that Plaintiff's psychiatric condition does not exacerbate her experience of pain or other physical symptoms. *Id*. According to Dr. Singh, Plaintiff's condition would cause her to be off-task 20 percent or more of the time and be absent more than three times a month. *Id*.

Dr. Singh also completed a checklist form regarding Plaintiff's ability to perform work-related activities in light of her mental health impairments. *See id*. at 447. As for activities that fell under the category of being able to "understand, remember, or apply," Dr. Singh indicated that Plaintiff was moderately or markedly limited in these types of activities. *Id*. As for activities that fell under the category of being able to "concentrate, persist, or maintain pace," Dr. Singh found that Plaintiff was moderately, markedly, or extremely limited in these types of activities. *Id*. Similarly, in being able to "adapt or manage oneself," Dr. Singh indicated that Plaintiff had moderate, marked, or extreme limitations in her ability to perform activities in this category. *Id*.

Overall, Dr. Singh found Plaintiff "marked[ly]" limited in her ability to learn, recall, or use information to perform work activities; regulate her emotions, control her behavior, and maintain well-being in a work setting; relate to and work with supervisors, co-workers, and the public; and focus attention on work activities and to stay on task at a sustained rate. *Id*. When asked whether Plaintiff would be able to perform regular, full-time competitive work on a sustained basis without

6

being absent more than two times per month, being off-task more than 15 percent of the day, or needing additional breaks because of her impairments, Dr. Singh checked the "No" box. *Id*. Finally, when asked whether Plaintiff would still have an underlying severe psychiatric condition impairing her ability to engage in normal work activity even if she stopped abusing drugs or alcohol, Dr. Singh checked the "Yes" box. *Id*.

In reviewing Dr. Singh's opinion on the Medical Impairment Questionnaire, the ALJ ultimately found it "unpersuasive as the[] limitations are not supported or consistent with the record." (Doc. #13-2, *PageID* #66). Here, she pointed out that Plaintiff's mental status examinations were generally unremarkable throughout the adjudicatory period. *Id*. Also, in contrast to the responses on the questionnaire, Dr. Singh and Plaintiff's other medical providers "generally noted that her mental symptoms were stable and [she] did not experience any side effects." *Id*. Finally, the ALJ acknowledged a recent incident where Plaintiff was sent to the emergency room after the police found her intoxicated and with a laceration to her head and noted that she denied any suicidal or homicidal ideation and indicated that she was not in need of her medications during the behavior health assessment. *Id*.

The ALJ's explanation for finding Dr. Singh's opinion unpersuasive is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 416.920c—supportability and consistency. She pointed out that discrepancies between Dr. Singh's unremarkable findings at his underlying examinations of Plaintiff and the opined limitations on the questionnaire. Indeed, on the mental status examinations he completed, Dr. Singh consistently documented "normal findings," including normal appearance/behavior, normal movements, normal speech/language, no delusions, no ideation or pain, and no perceptual abnormalities. (Doc. #13-8, *PageID* #s 340-54; Doc. #13-9, *PageID* #s

7

365-66). Dr. Singh also routinely noted that she had "stable" mood and "improved symptoms." *Id*. Similarly, the ALJ pointed out that inconsistencies between Dr. Singh's opined limitations and the unremarkable findings from Plaintiff's other physicians, including the behavior health assessment from her emergency room visit. *Id*.

Additionally, the ALJ had previously evaluated the different categories of mental functioning and found that Plaintiff only had moderate limitations while Dr. Singh found limitations ranging from moderate to extreme in all of these categories. (*Compare* Doc. #13-2, *PageID* #s 61-62 *with* Doc. #13-9, *PageID* #s 447-48). In fact, in the context of discussing why Plaintiff did not satisfy any of the Listing criteria, the ALJ provided an in-depth explanation as to why she concluded that Plaintiff only had moderate limitations in the realms of mental functioning. (Doc. #13-2, *PageID* #s 61-62). This also supports the ALJ's conclusion that Dr. Singh's opinion was inconsistent with the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions."). In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 416.920c(b)(2) (requiring only that the ALJ articulate how she considered the supportability and consistency factors).

Further, there is substantial evidence to support the ALJ's decision regarding Plaintiff's mental limitations. For example, the ALJ considered other opinion evidence in rendering her decision, including the opinions of the state agency consultants, Irma Johnston, Psy.D. and Denise Rabhold, Ph.D. (Doc. #13-2, *PageID* #s 65-66).

8

Dr. Johnston reviewed Plaintiff's medical records in June 2018 and found that she had no limitations in her ability to understand, remember, or apply information; a moderate limitation in her ability to interact with others and concentrate, persist, or maintain pace; and a mild limitation in her ability to adapt or manage herself. (Doc. #13-3; *PageID* #108-10). She detailed further that Plaintiff would be able to perform simple, routine tasks, but "[m]ay have some difficulty due to anxiety" and would be "able to adapt to settings where the pace is not fast." *Id*. at 110. She also opined that while Plaintiff should "avoid frequently interaction with the general public[,] she could "relate to coworkers and supervisors with minimal difficulties." *Id*. at 111. Finally, because of her moderate limitations in her ability to adapt, Plaintiff should have only infrequent changes that are clearly explained. *Id*.

Similarly, Dr. Rabhold reviewed Plaintiff's medical records in August 2018 and opined that she had mild limitations in her ability to understand, remember, or apply information and moderate limitations in her abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Doc. #13-3; *PageID* #119-20). Dr. Rabhold then adopted the exact same additional limitations as Dr. Johnston. *Id*.

In reviewing these opinions, the ALJ concluded that they were "generally consistent with the overall record." (Doc. #13-2, *PageID* #s 65-66). In support, the ALJ pointed to the generally unremarkable mental status evaluations and findings by Plaintiff's treating providers that she had stable symptoms and no side effects to medications. *Id*. Based on all these reasons, the ALJ found the opinions of Drs. Johnston and Rabhold to be "generally persuasive" and incorporated most of their opined functional limitations into Plaintiff's RFC. *Id*. at 63-66. However, noting that there was significant additional evidence received after these opinions were formed, the ALJ found that

9

portions of their opinions did not accurately reflect the overall evidence, thus warranting even more severe social limitations. *Id*. at 65-66.

Accordingly, the ALJ properly relied on the opinions of the state agency medical consultants in assessing Plaintiff's RFC, and their opinions constitute substantial evidence to support the ALJ's decision. Since there is substantial evidence to support the ALJ's decision, this Court will not disturb the Commissioner's findings.

Finally, the ALJ adequately addressed Plaintiff's subjective symptoms. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

In response to Plaintiff's subjective complaints regarding the severity of her symptoms, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc. #13-2, *PageID* #63). In addition to the medical evidence reviewed above, the ALJ also considered Plaintiff's self-assessed function report and noted the inconsistences with her alleged symptoms. *Id* at 64-65. Specifically, she noted:

> In the function report, [Plaintiff] did not need special reminders to take care of her personal grooming or to take her medication. [Plaintiff] could prepare simple meals.

10

> [Plaintiff] could perform household chores. [Plaintiff] could pay bills, count change, handle a savings account, and use a checkbook/money order. [Plaintiff] could use public transportation and go out alone. Although [Plaintiff] testified her son occasionally went for her, [Plaintiff] indicated within the function report that she went shopping once to twice a week. [Plaintiff] could engage in social activities. [Plaintiff] did not indicate any problems getting along with family, friends, neighbors, or others. [Plaintiff] could get along with authority figures. All of these activities requires some degree of physical or mental functioning greater than what [Plaintiff] alleged.

*Id.* (internal record citations omitted).

Hence, the ALJ carefully considered the totality of the evidence, applied the proper standards, and clearly explained her credibility findings. In doing so, she did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, she simply found that her medical conditions did not support the degree of limitations advocated by Plaintiff. Under these circumstances, this Court is without authority to disturb that finding.

For all the foregoing reasons, the Court finds that the ALJ properly considered and explained the reasons for finding Dr. Singh's opinion unpersuasive. Moreover, the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's assignment of error is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #16) is **DENIED**;

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

March 8, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge